**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 12-cv-3245-WJM

ROBERT M. KONGSBERG, II,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

**ORDER REMANDING CASE**

This social security benefits appeal is before the Court under 42 U.S.C. § 405(g). Plaintiff Robert M. Kongsberg ("Plaintiff") challenges the final decision of Defendant, the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits. This decision affirmed a prior order by an administrative law judge ("ALJ"), who ruled Plaintiff was not disabled within the meaning of the Social Security Act ("Act"). This appeal followed.

For the reasons set forth below, the ALJ's decision denying Plaintiff's application for Social Security disability benefits is VACATED and this matter is REMANDED for further proceedings.

**I. BACKGROUND**

Plaintiff was born in 1975 and was 32 years old on the alleged disability onset date. (Admin. Record ("R.") (ECF No. 9) at 128, 123.) Plaintiff has a tenth grade education and has prior work experience as a kitchen helper/dishwasher, bellman, and

housekeeper.  (R. at 55-56.)

Plaintiff first filed an application for supplemental security income in May 2010 alleging that he was disabled due to major mental depression and anxiety, as well as hepatitis C.  (R. at 62, 123-26.)  Plaintiff's application was denied and, upon a request for a hearing, his claims were heard by Administrative Law Judge ("ALJ") Kim Soo Nagle on July 27, 2011.  (R. at 16.)  In support of his application, Plaintiff submitted medical evidence from, amongst others:  Dr. Grazyna Tycner, his former treating psychiatrist; Dr. Andrea Scramarella, his current treating psychiatrist; and Mr. Nicolas Rodriguez, his counselor.  (R. at 192-98, 261-67, 390-94.)  In addition to their treatment records, each of these providers completed a "Residual Functional Capacity Evaluation (Mental)" form, which requires the provider to assess how the patient's mental/emotional capabilities affect his ability to do work-related activities in a regular work setting.  (R. at 253-55, 314-16, 387-89.)

On July 28, 2011, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]  (*Id.*)  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 3, 2010.  (R. at 18.)  At step two, she found that Plaintiff's severe impairments were depression and polysubstance abuse, but that Plaintiff's hepatitis C was not a severe impairment.

---

[1] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. § 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988.)  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

(*Id.*)  At step three, the ALJ found that Plaintiff's depression and polysubstance abuse, while severe impairments, did not meet or medically equal any of the impairments or combination of impairments listed in the social security regulations.  (R. at 19.)   The ALJ assessed Plaintiff's residual functional capacity ("RFC"), finding that he could perform a full range of work at all exertional levels, but that he had nonexertional limitations which required avoidance of concentrated exposure to dangerous machinery and protected heights.  (R. at 20.)  The ALJ also found that Plaintiff has "moderate limitations in concentration and pace" which limited him to "simple, routine, and repetitive tasks, but without specification as to the number of steps required to complete such tasks, performed in an environment without strict production quotas, and with only occasional interaction with coworkers, supervisors and the public."  (R. at 20-21.)  At step five, the ALJ found that Plaintiff was capable of performing his past relevant work as a housekeeper, which is an unskilled position at a medium exertional level which does not require the performance of work-related activities precluded by the RFC.  (R. at 27.)

Accordingly, the ALJ found that Plaintiff was not disabled within the meaning of the Act and, thus, not entitled to benefits.  (R. at 27.)  The Appeals Council denied Plaintiff's request for review.  (R. at 1.)  Plaintiff then filed this action seeking review of the Commissioner's decision.  (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### III. ANALYSIS

On appeal, Plaintiff raises three issues: (1) the ALJ failed to properly consider the opinions of Dr. Tycner, Dr. Scramarella, and Mr. Rodriguez; (2) the ALJ did not state valid reasons for giving more weight to the State agency psychological consultant; and (3) the ALJ failed to properly assess Mr. Rodriguez's opinion. (ECF No. 15 at 16-17.) All of these arguments relate to the manner in which the ALJ weighed the medical opinions in this case.

"An ALJ must evaluate every medical opinion in the record." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). In determining what weight to give a medical opinion, the ALJ "must . . . consider a series of specific factors" listed in 20 C.F.R. § 404.1527(d). *See id.* Those factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is

>    supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (internal quotations omitted). The ALJ need not explicitly discuss each individual factor. *See Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007). Nevertheless, the ALJ must consider every factor in determining the weight to assign a medical opinion, and "give good reasons in the notice of determination or decision for the weight he ultimately assigns the opinion." *Watkins*, 350 F.3d at 1301(quotation marks and brackets omitted).

The analysis is slightly different for a treating physician. The opinion of a treating physician is generally "entitled to great weight because it reflects expert judgment based on continuing observation of a patient's condition over a prolonged period of time." *Williams v. Chater*, 923 F. Supp. 1373, 1379 (D. Kan. 1996). The analysis of how much weight to accord a treating source opinion is sequential:

>    An ALJ must first consider whether the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. If the answer to this question is "no," then the inquiry at this stage is complete. If the ALJ finds that the opinion is well-supported, he must then confirm that the opinion is consistent with other substantial evidence in the record. In other words, if the opinion is deficient in either of these respects, then it is not entitled to controlling weight.

*Watkins*, 350 F.3d at 1300 (citing SSR 99-2p, 1996 WL 374188 (July 2, 1996)). A finding that a treating doctor's opinion does not meet the test for controlling weight does "not [mean] that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20

C.F.R. §§ 404.1527 and 416.927." SSR 96–2p, 1996 WL 374188 (July 2, 1996). If the ALJ chooses to disregard the opinion entirely, he must "give specific, legitimate reasons" for doing so. *Watkins*, 350 F.3d at 1301.

Plaintiff argues that the ALJ erred in her treatment of the opinions on "Residual Functional Capacity Evaluation" forms (the "RFCE Form") completed by Drs. Tycner and Scamarella, his current and former treating psychiatrists, and Mr. Rodriguez[2], his current therapist (collectively the "Treating Providers"). The ALJ gave "little weight" to the RFCE Forms completed by Dr. Tycner and Mr. Rodriguez, and not "much weight" to Dr. Scamarella's RFCE Form.[3] (ECF No. 15 at 11-17.)

The ALJ based the weight she assigned to these RFCE Forms on her belief that these Treating Providers had an "apparent misunderstanding" of how the Social Security Administration's "mental residual functional capacity assessment form" ("MRFCA Form") worked, which resulted in their failure to translate the mental

---

[2] Because a licensed therapist is not an "acceptable medical source", a treating therapist's opinions are not entitled to the same deference as a treating physician. *See Komar v. Apfel*, 134 F.3d 382 (10th Cir. 1998) (therapist opinions are "entitled to less weight than that accorded to the opinions of acceptable medical sources."). However, the regulations recognize that evidence from "other medical sources," including social workers and therapists, may be based on special knowledge of the individual and may provide insight into the severity of an impairment and how it affects the claimant's ability to function. *See* SSR 06003p, 2006 WL 2329939 at **2, 3, 5 (Aug. 9, 2006). Thus, an ALJ must still consider Mr. Rodriguez's opinions when determining the severity of Plaintiff's impairment, and the effect of his impairment on his ability to work. *See Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003).

[3] The ALJ did not consider all of Dr. Scamarella's opinions equally. She gave "some weight" to Dr. Scamarella's opinion on the effect of Plaintiff's substance abuse on his mental impairment, and Dr. Scamarella's opinion that his illness would not be as severe in the absence of substance abuse. (R. at 26.) However, the ALJ stated that she was "unable to give much weight to the remainder of Dr. Scamarella's opinion . . . as it is modeled after the agency's MRFC form, but without a functional analysis." Thus, the ALJ essentially treated the RFCE Form completed by Dr. Scamarella the same way she treated the RFCE Forms completed by Dr. Tycner and Mr. Rodriguez.

6

limitations they diagnosed into a description of Plaintiff's actual vocational abilities. (R. at 25.) The ALJ characterized the RFCE Forms as similar to Sections I and II of the MRFCA, in that both require the practitioner to complete a chart assessing the presence and degree of a claimant's functional limitations. (*Id.*) The ALJ noted that the Administration's MFRCA Form also contains a third section, in which the practitioner must state his or her "ultimate functional capacity assessment", which is effectively an RFC assessment. (*Id.*) Because the RFCE Forms completed by Plaintiff's Treating Providers did not contain a narrative RFC assessment section, the ALJ viewed these Forms as "lacking and incomplete" and gave them little weight. (*Id.*)

The Court finds that this was not a legitimate basis for discounting the medical opinions proffered by Plaintiff's Treating Providers on the RFCE Forms. While the RFCE Forms may have included questions that are similar to those contained on the MFRCA Forms, they are not equivalent, and the RFCE Forms are not invalid simply because they do not include a section asking the provider to make an RFC assessment.

Instead, the Court finds that the RFCE Forms included medical opinions that the ALJ was required to consider in accordance with the standard for evaluating treating providers. The RFCE Form directed the provider to "determine this individual's ability to do <u>work-related activities on a day-to-day basis in a regular work setting</u>", and to assess "how the individual's mental/emotional capabilities are affected by any impairments you have diagnosed." (R. 314 (emphasis in original).) It listed nineteen categories for which the provider was to circle one of the following: none, slight, moderate, marked, extreme, or unknown. (*Id.* at 314-16.) Each of these terms had a specific meaning, as

7

set forth on the RFCE Form.  For example, "moderate" meant that the provider believed Plaintiff had "[m]oderate limitation in this area, but still able to function", while "marked" meant that Plaintiff had "[s]evere limitations in this area.  The ability to function in this area is severely limited but not precluded."  (*Id.*)  Thus, by circling "marked" on the RFCE Form, Plaintiff's Treating Providers were denoting his or her belief that Plaintiff's ability to function in a particular area was severely limited.  These are medical opinions about Plaintiff's functional limitations, and should have been considered by the ALJ when fashioning her RFC.  *See* 20 C.F.R. § 404.1545(a)(1) (noting that the RFC will be based on "all the relevant evidence in the record" that relates to "physician and mental limitations that affect what [the claimant] can do in a work setting.").

The ALJ discredits Plaintiff's medical evidence because it does not include an RFC assessment despite the fact that, were an RFC assessment included, she would not be required to defer to such assessment.  The regulations make clear that it is the Commissioner's responsibility to assess a claimant's RFC, and the ALJ failed to cite any legal basis for placing this onus on Plaintiff's Treating Providers.  *See* 20 C.F.R. §§ 404.1527(e)(2), 404.1546(c), 416.927(e), 416.946(c); *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004).  While an ALJ must assess a claimant's RFC based on all the evidence in the record, the RFC finding does not have to directly correspond to a specific medical source opinion.  *See* 20 C.F.R. § 404.1545(a)(1); *Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012).  Thus, the ALJ should not have faulted Plaintiff's Treating Providers for failing to perform an RFC when ultimately it was her responsibility to make the RFC finding based on the medical opinions.

As a general rule, an ALJ "must consider all relevant medical evidence, cannot substitute his expertise for that of a qualified physician, and, absent countervailing clinical evidence or a valid legal basis for doing so, cannot simply disregard the medical conclusions of a qualified physician." *Wetherill v. Director, O.W.C.P.*, 812 F.2d 376, 382 (7th Cir. 1987). It may well be that, on remand, the ALJ discounts the opinions contained in the RFCE Forms for a valid reason, such as inconsistency with other evidence in the record or the fact that check box forms are often entitled to little weight. *See* 20 C.F.R. § 404.1527(d)(2) (listing reasons an ALJ may not give controlling weight to a treating physician's opinions); *Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012). However, the ALJ is still required to evaluate the Treating Providers' RFCE Forms as medical opinions and consider the factors set forth in 20 C.F.R. § 404.1527(d). The Court finds that the failure to do so constitutes reversible error, and that remand to the Commissioner for further proceedings is appropriate.

## IV. CONCLUSION

For the reasons set forth above, the Court VACATES the Commissioner's denial of benefits and REMANDS this case for further proceedings.

Dated this 3rd day of March, 2014.

BY THE COURT:

William J. Martinez
United States District Judge